UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/7/2020__

---

SMART STUDY CO., LTD.,

         *Plaintiff*,

v.

A PLEASANT TRIP STORE, *et al*.,

         *Defendants*.

---

1:20-cv-1733 (MKV)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## IN CONNECTION WITH PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

  Plaintiff, Smart Study Co., Ltd., commenced this copyright and trademark infringement action with the filing of its Complaint [ECF #6] on February 27, 2020.  The case concerns the trademark and copyright rights to commercial use of the "Baby Shark" image and name.  *See* Complaint ¶ 8-14.  Baby Shark, as explained further below, is a worldwide sensation geared at toddlers and young children that has been marketed and licensed by Plaintiff following the release of a viral video on the internet in 2016.  *See* Complaint ¶ 8-9.  Plaintiff claims that Defendants, more than 100 individuals, companies, and other business entities, sell counterfeit Baby Shark products through Alibaba and AliExpress (Chinese marketplaces and e-commerce platforms), infringing on its intellectual property.  *See* Complaint ¶¶ 26-27, 30-45.

  On the same day the Complaint was filed, Plaintiff filed an application for a temporary restraining order and preliminary injunction [ECF #12-16] seeking to enjoin the sale of allegedly counterfeit Baby Shark products, which Plaintiff claims infringe on Plaintiff's intellectual property rights.  The temporary restraining order ("TRO") was granted that day [ECF #21].  The TRO, *inter alia*, allowed alternative email service on Defendants, retailers who sell allegedly counterfeit

products through internet retail platforms related to Chinese company Alibaba, and set dates for briefing and a hearing on the motion for a preliminary injunction.  However, as a result of the global COVID-19 pandemic and the ensuing shutdown of most business in China, more time than originally allowed was needed to locate service email addresses for the Defendants.  As a result, the Court modified the TRO to allow Plaintiff more time to serve the Defendants, and for the Defendants to file oppositions to the preliminary injunction motion.  *See* ECF #18 at 1.  On March 16, 2020, all Defendants were served,[1] *see* ECF #20, and oppositions from Defendants were due April 24, 2020.  None were filed.

On May 5, 2020, the Court held a hearing on the application for a preliminary injunction. Only counsel for Plaintiff appeared; no representatives of any Defendant participated in the hearing or have appeared in this action.  At the hearing, following argument and questioning of counsel for Plaintiff, the Court granted the motion for a preliminary injunction, and a written Order was entered shortly thereafter.  *See* ECF #23 (the "Preliminary Injunction Order").  At the May 5 hearing, the Court summarized its findings of fact and conclusions of law which lead it to grant the injunction, *see* Fed. R. Civ. P. 52(a)(2), but noted a full opinion would follow.

## FACTUAL FINDINGS

No Defendant has appeared in this action, and no opposition briefing was filed in advance of the May 5 hearing.  Thus, the facts as stated in Plaintiff's Complaint are undisputed.  For the purposes of the motion for a preliminary injunction, the Court adopts all of the facts as stated in the Complaint and the papers in support of the motion.  *See Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965) ("[I]f there is no dispute between the parties about the facts, allegations of

---

[1] Plaintiff explained during the May 5 hearing that, as authorized in the TRO, they served Defendants using Rmail, an online service that confirms valid proof of authorship, content, and delivery of an email.  Plaintiff explained that Rmail had confirmed that all Defendants received the service emails authorized by the TRO.

the complaint may be accepted as true, thus eliminating the necessity of formal findings.");
*Carpenters' Dist. Council, Detroit, Wayne & Oakland Ctys. & Vicinity, of United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) ("It is true that if there is no dispute between the parties about the facts, the allegations of a complaint may be accepted as true, thus eliminating the necessity of formal findings . . . ."). While not an exhaustive recitation, the Court summarizes the facts here.

Plaintiff is a South Korean company that develops entertainment and gaming content for a global audience. Complaint ¶ 7. Plaintiff produces content directed at preschool-aged children through a single brand, Pinkfong. Complaint ¶ 8. In 2016, Pinkfong released the "Baby Shark" song and music video on YouTube. *Id.* The song and video soon went viral, and today the video has over 3.1 billion views on YouTube. Complaint ¶ 8.[2] After the video's release, Plaintiff developed a worldwide licensing program for Baby Shark products, including toys, clothing, and entertainment. Complaint ¶ 9. After the products were introduced to the market, Plaintiff also applied for and received various trademark and copyright registrations for Baby Shark and other related concepts like "Mommy Shark," "Daddy Shark," and "Baby Shark (Motion Picture)." Complaint ¶ 13, 15. Today, Baby Shark remains a widely popular brand for young children.

Defendants, who are individuals and business entities located in China, *see* Complaint ¶ 26, attempted to capitalize on the Baby Shark phenomenon by selling allegedly counterfeit Baby Shark products. Complaint ¶ 27. The products are sold on Alibaba and AliExpress, e-commerce platforms that allow merchants to sell goods to a global audience. Complaint ¶ 23. The sites annually have over $1 billion in sales internationally, including to the United States, *see*

---

[2] While the Complaint includes the 3.1 billion number, at the time this opinion is written, the original video has registered more than 5.2 billion YouTube views. *See* Pinkfong! Kids' Songs & Stories, *Baby Shark Dance | Sing and Dance! | @Baby Shark Official | PINKFONG Songs for Children*, YouTube (June 17, 2016), https://www.youtube.com/watch?v=XqZsoesa55w&vl=en.

Complaint ¶ 24, but allegedly have also become known as a marketplace for counterfeit and trademark/copyright infringing goods. *See* Complaint ¶ 25. Confirming that reputation, Defendants here, rather than proceed through Plaintiff's licensing program, manufactured, marketed, and sold Baby Shark products that appear to infringe on Plaintiff's intellectual property. *See* Complaint ¶¶ 32, 37. Defendants' products are of lower quality than those produced by Plaintiff and its licensees, and are sold at substantially lower prices, undercutting Plaintiff's market-share and de-valuing Plaintiff's intellectual property. Complaint ¶¶ 3, 11, 37-39.[3]

## CONCLUSIONS OF LAW

### A. Personal Jurisdiction

The Court has personal jurisdiction over the Defendants. In reaching this conclusion, the Court applied a two-part analysis: first, the Court considered the law of the forum state to determine if jurisdiction is proper, and second, the Court considered whether exercise of jurisdiction is consistent with due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013); *see Bristol-Myers Squibb Co. v. Superior Court*, -- U.S. --, 137 S. Ct. 1773, 1779 (2017) ("Because '[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power,' it is 'subject to review for compatibility with the Fourteenth Amendment's Due Process Clause,' which 'limits the power of a state court to render a valid personal judgment against a nonresident defendant.'" (citing *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 918 (2011); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980))).

---

[3] Since commencing the lawsuit, Plaintiff has been in contact with numerous Defendants, with whom they have reached resolutions of the claims in the Complaint. The Court has approved two notices of dismissal with respect to several Defendants.

New York's long arm statute, N.Y. C.P.L.R. § 302(a)(1), provides that a Defendant is subject to personal jurisdiction in New York based on business contacts where both "(1) The defendant [has] transacted business within the state; and (2) the claim asserted [] arise[s] from that business activity." *Licci*, 732 F.3d at 168 (citing *Solè Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The "transacted business" giving rise to jurisdiction must include "some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the New York courts." *DH Servs., LLC v. Positive Impact, Inc.*, No. 12-cv-6153 (RA), 2014 WL 496875, at *3 (S.D.N.Y. Feb. 5, 2014) (citing *SPCA of Upstate New York, Inc. v. American Working Collie Association*, 18 N.Y.3d 400, 404 (2012)). Similarly, the "arising from" element requires "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci*, 732 F.3d at 168.

Both requirements are met here. Since the claims in Plaintiffs' complaint all arise from the sale of allegedly counterfeit and infringing goods, the only question for the Court under New York law is whether the Defendants do sell goods in this state (*i.e.* whether they transact business here). In *Chloè v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), the Second Circuit "update[d] [its] jurisprudence on personal jurisdiction in the age of internet commerce." *Id.* at 165. In *Chloè*, the Court endorsed a finding that a California resident was subject to New York jurisdiction where he sold a single allegedly trademark-infringing handbag (in addition to other non-infringing goods) over the internet into New York in his capacity as an employee of a company that sold other goods into the state. *Id.* at 166-67. The Court found that the Defendant's sale of bags generally into New York was sufficient to constitute "transacting business" and the sale of one bag subject to the suit was sufficiently related to the business. *Id.* at 167. While the full extent of Defendants sales into New York are unknown, their products are available for sale and shipment

to New York.  Indeed, to verify its allegation that Defendants transact business in New York, Plaintiff here purchased and received in New York several counterfeit Baby Shark products from approximately ten percent of Defendants.  *See* Declaration of Jessica Arnaiz in Support of the Motion, ECF #14 ("Arnaiz Decl."), Ex. B.[4]  These fourteen orders, where Plaintiff purchased one or more items, indicate that, at least with regard to these fourteen defendants, jurisdiction is proper in New York because they transact business here.

As for the other Defendants, and as an additional ground for jurisdiction over the fourteen Defendants from whom Plaintiff purchased products, jurisdiction is appropriate because Defendants operate a "highly interactive website" from which consumers in New York can purchase the allegedly infringing goods at issue here.  *See Chloé*, 616 F.3d at 170 (collecting New York cases holding that an interactive commercial website accessible from New York constitutes transacting business for personal jurisdiction); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("A website that does more than provide information about a product and allows customers to purchase goods online, is a "highly interactive website," which may provide a basis for personal jurisdiction under CPLR § 302(a).  That the website Defendants operate is based on the Alibaba platform and that orders are processed by Alibaba, makes no difference, because Defendants operate on the platform as a regular business and not simply as occasional sellers.  *See Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3 ("For internet sellers who use an internet storefront like Amazon, courts generally distinguish between two categories.  First are commercial vendors who use it "as a means for establishing regular business with a remote forum." Jurisdiction is proper as to these defendants.  In the second category are occasional sellers who use an internet service once to sell

---

[4] During the May 5 hearing, Plaintiff explained that in order to ensure that Defendants transact business in New York, Plaintiff's investigators purchased counterfeit Baby Shark products from approximately ten percent of Defendants.

goods to the highest bidder who happens to be in the forum state." (citing *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458 (JS)(ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012))). Because all Defendants operate such a "highly interactive website" as a means to sell their products into New York, and because those websites are accessible in this state, personal jurisdiction over Defendants is appropriate.

Exercise of jurisdiction here is consistent with due process.  "The due process inquiry consists of two components—the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *McGraw-Hill Global Education Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 413 (S.D.N.Y. 2017); *accord Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (holding that courts should consider both minimum contacts and substantive reasonableness); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1785-86 (Sotomayor, J., dissenting) (collecting cases).  First, Defendants have purposely availed themselves of New York by marketing and selling products into New York through their internet storefronts. As a result, Defendants' contacts with New York "satisfy the minimum contacts prong of the constitutional inquiry for the same reasons that they satisfy the statutory inquiry."  *Mathrani*, 295 F. Supp. 3d at 413 (citing *Licci*, 732 F.3d at 170 (noting that while "section 302(a)(1) . . . and constitutional due process are not coextensive," cases in which personal jurisdiction is permitted under the long-arm statute but is prohibited under the due process analysis are "rare").

Second, asserting jurisdiction here is reasonable.  When a plaintiff has made a threshold showing of minimum contacts, the exercise of jurisdiction is favored, but may be overcome where the Defendants present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)).  Needless to say,

Defendants have not made any showing that jurisdiction is unreasonable here as they have elected not to appear. *Cf. McGraw-Hill*, 295 F. Supp. 3d at 414 (citing *Peeq Media, LLC v. Buccheri*, 2016 WL 5947295, at *5 (S.D.N.Y. Oct. 13, 2016)). The Court will not endeavor to find additional hardships on the Defendant where they have not otherwise brought them forward; the Plaintiff's election of forum in this case is dispositive. *Accord Asahi*, 480 U.S. at 113-14 (holding that once minimum contacts are established, the plaintiff's interest in obtaining convenient and effective relief is among the factors that determine reasonableness).

Thus, personal jurisdiction over the Defendants is appropriate in New York.

## B. Preliminary Injunction

Under Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate only if the movant shows: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)); Fed. R. Civ. P. 65(a).

Plaintiff has demonstrated irreparable harm. "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) (alteration in original) (citing *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010), *aff'd*, 511 F. App'x 81 (2d Cir. 2013). As the undisputed facts in the Complaint allege, Defendants' actions have deprived Plaintiff of the

ability to control the quality of the products using the Baby Shark name and image.  *See El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986)  ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").  Moreover, Defendants' cheaper prices (as a result of the inferior materials) have resulted in devaluation of the marks themselves.  *See* Declaration of You Jae Kang in Support of Motion, ECF #15 ("Kang Decl."), ¶¶ 25-26, 28; Declaration of Brieanne Scully in Support of Motion, ECF #16 ("Scully Decl."), ¶ 21. These injuries are sufficient to constitute irreparable harm.  *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243-44.  (2d Cir. 2009). [5]

Plaintiff also has demonstrated a likelihood of success on the merits of its trademark and copyright claims.  On the trademark claims, Plaintiff needs to show that its marks are valid and entitled to protection and that Defendants' use of the marks is likely to cause confusion.  *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010).   Plaintiff has shown that the marks are valid by including the trademark registrations on file with the United States Patent and Trademark Office.  *See* Kang Decl., Ex. A.  Additionally, the alleged infringement here, as supported by the undisputed facts and examples Plaintiff includes, are "inherently confusing," abrogating any need for examination of the factors in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), because the products in question include counterfeit references and versions of the Baby Shark name and likeness.  *See Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010).

---

[5] The Court's preliminary injunction order also directs certain financial institutions to freeze Defendants' accounts and for the websites that host Defendants' storefronts to restrict any access to them.  For the reasons stated in Plaintiff's memorandum of law in support of the motion [ECF #13] and the declarations filed in support of the motion, the court believes that these restrictions are necessary to prevent Defendants from causing further irreparable harm by creating new storefronts and business identities to sell their counterfeit goods.

To obtain a preliminary injunction, Plaintiff need not establish a likelihood of success on every claim.  It is sufficient to establish likelihood of success on the merits of only one of its claims.  *See 725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 459 (S.D.N.Y. 2019) ("Further, Plaintiffs need not demonstrate a likelihood of success on the merits of every claim— rather, they need only 'show a likelihood of success on the merits of at least one of [their] claims.'" (alteration in original) (quoting *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018))).  That said, Plaintiff also is likely to succeed on its copyright claim.

To prevail on the copyright claim, Plaintiff must prove it owns a valid copyright and that the infringing products copy an "original" element of the work.  *See Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011).  In support of its copyright claim, Plaintiff includes its certificate of registration from the United States Copyright Office to prove it owns a valid copyright.  *See* Kang Decl., Ex. B; *see also Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012) ("A certificate of copyright registration is *prima facie* evidence of ownership of a valid copyright . . . .").  Plaintiff has also demonstrated that Defendants are infringing on Plaintiff's copyright.  *See P&G v. Colgate-Pamolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (noting that copyright infringement may be proven both by direct and indirect evidence).  The Plaintiff's Complaint and Exhibits, the factual allegations of which the Court has adopted in full for the purposes of this motion, include various pictures of Defendants' infringing products as compared to Plaintiff's legal ones.  The products, in short, appear practically identical.  *See* Complaint ¶ 37-39; Arnaiz Decl., Ex. A; Scully Decl., Ex. A.  There is also no doubt that Defendants had access to Plaintiff's work; indeed, it seems wholly unlikely that Defendants could design, manufacture, and sell their products without any sense that Plaintiff's work existed.  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (holding that infringer had access to

copyright owners work where there was a "reasonable possibility" of encountering it).  Indeed, Plaintiff's global marketing efforts using the Baby Shark images and products makes this possibility highly unlikely.

Finally, the balance of hardships tips decidedly in Plaintiff's favor, and an injunction is in the public interest, for the same reason: Defendants' business is seemingly based on counterfeit, intellectual property-infringing tactics.  There is no argument that requiring Defendants to comply with legal obligations is either a legitimate hardship or against the public interest.  "[T]o the extent defendants 'elect to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" *Broad Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (alterations in original) (quoting *Mint, Inc. v. Amad*, No. 10-cv-9395 (SAS), 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011)).  Likewise, "injunctive relief here will advance the public's 'compelling interest in protecting copyright owners' marketable rights to their work' so as to 'encourage[e] the production of creative work.'" *Id.* (alteration in original) (citing *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012)).

Plaintiff has demonstrated that it is likely to succeed on both its trademark and copyright claims and that absent an injunction it will suffer irreparable harm.  Additionally, there is no hardship on Defendants or superseding public interest that warrants the Court deny the motion.  A preliminary injunction is appropriate.

## CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law in Support of the issuance of a preliminary injunction.  Plaintiff is directed to serve a copy of this opinion on Defendants, as set forth in the Preliminary Injunction Order.

SO ORDERED.

Date:   May 7, 2020
      New York, NY

_____
MARY KAY VYSKOCIL
United States District Judge